The following is the opinion of the referee:
A. H. Joline, Referee.
The plaintiffs bring this action to recover damages for the breach of an alleged contract made with defendants in the month of September, 1886, by which the defendants agreed to sell and deliver to plaintiffs all the crude glycerine to be manufactured by them during the season of 1886-87, at the price of deven cents per pound up to April 1, 1887, and for the balance of the season at seven and one-quarter cents per pound.
The defendants allege that on or about September 16, 1886, the plaintiffs, by their representative, “ falsely and with intent to deceive, alleged and represented to these defendants that the market price at that time of crude glycerine of the same grade and quality as that manufactured by the defendants was seven cents or less per pound,” and that relying upon such representations, and believing the same to be true, the defendants orally consented to sell to the plaintiffs at seven cents per pound all such glycerine as they should manufacture between said 16th day of September, 1886, and the 31st day of December, 1886, but no longer."
The defendants further allege that afterwards, on or about October 15, 1886, they learned that such allegations and representations were false, and,, upon information and belief, that the same were made to them willfully, and with intent to deceive them, and that thereafter they refused to deliver any more glycerine to the plaintiffs at the price of seven cents per pound. They further charge that the market price of crude glycerine of the same character and grade as that manufactured by them was at least nine cents per pound on September 16, 1886.
The question whether or not a false representation by a vendee to a vendor as to the market price of the vendor’s own product constitutes a defense to an action to enforce a contract induced thereby, is not, in my opinion, one upon which I may exercise independent judgment. The general term of this court has held that the affirmative allegations of the answer with respect to false and fraudulent representations of market value by the plaintiffs constitute a good defense to the cause of action set forth in the complaint. Marx v. Gross, 58 N. Y. Super. Ct., 221; 31 St. Rep., 403. That decision is controlling here.
*89 The main question to be determined by the referee is, therefore, whether the defendant has established, by sufficient and competent proof, that the plaintiffs’ agent made false representations to the defendants of the market price of crude glycerine, knowing such representations to be false, and intending thereby to induce the defendants to make the contract.
The defendants were manufacturers of candles. Crude glycerine is a by-product of their manufacture. The plaintiffs were refiners of glycerine, and for some time prior to September, 1886, had been in the habit of purchasing the crude article produced by defendants. On September 16, 1886, one Schwartz, an agent or representative of plaintiffs, came to the defendants’ office, and said, to Mr. Gross, of defendants' firm, that he had come over to see about their glycerine. Mr. Gross testifies: “I said, very well; what is it worth ? ’ He figured around one way and another, and said, ‘ Mr. Gross, we can buy glycerine at six and one-half cents, but we will give you seven for your glycerine, because we are accustomed to using it, and understand its nature. ’ He said furthermore : ‘ I can assure you that that is the price.’ He took out a letter and said: 11 have here a letter from France.’ * * * I said: ‘Very well, Mr. Schwartz, if that is the price of glycerine, all well and good.’ ” On his re-direct examination he testified that Schwartz said: “ I have a letter from France and I can assure you we can buy glycerine at six and one-half.” This is substantially all of the testimony as to what representations were made by plaintiffs or their agents.
Assuming that Schwartz’ statement: “We can buy glycerine at six and one-half' cents ” was equivalent to saying that the market price of crude glycerine of the quality of that produced by defendants was six and one-half cents, the evidence does not satisfy me that these representations were false or fraudulent, or known to Schwartz to be false when he made them.
The subject of the market price of crude glycerine is one which, as is manifest from the testimony, is involved in much obscurity. The defendants, in order to account for their ignorance of the market value of their own product, had proved that there was and is no public exchange where crude glycerine is bought or sold, and that its market price is not regularly reported on any price-list, or at any exchange. Mr. Schweitzer, who was called as an expert, says: “ There is one kind of official quotation once a week, which is made between brokers, but it does not give the real tone of the market, it is very often speculative, but it isn’t based on real actual transactions.” He says: “It is very hard telling” about the prices of glycerine. He could not say what the price was on September 16,1886, and he produced some bills of imported glycerine, but they did not enable him to give the’price in September, 1886, with any confidence, and it is plain that he did not regard them as affording any “ criterion.” Mr. De Castro, another expert, could not tell definitely the market price of crude glycerine in September, 1886. He testified to one transaction in 28 Beaume French glycerine, and to the price he *90 would have paid for 25 Beaume glycerine of quality “ as good as the best French saponified,” which in September, 1886, he says would have been about eight and three-fourths cents. Mr. Glatz, a third expert, when asked what the price or value of defendants’ glycerine yras in September, 1886, found it “ very difficult to say,” and his statement on the subject was based upon the single transaction testified to by Mr. De Castro, which involved considerable calculation by the witness. There is practically no evidence as to the market value in September, 1886, of domestic crude glycerine of the character of that produced by defendants.
It is unnecessary to review in detail, or to make a minute analysis of all the testimony. It is sufficient to say that the proof fails to show that Schwartz knowingly spoke falsely when he said that hé could buy glycerine at six and one-half cents. The fact that in the late summer and fall the glycerine market was generally a rising one, it had been slack in the spring, beginning to improve in the latter part of August, and the further fact that in the latter part of November, 1886, plaintiffs made a sale at twelve cents, do not convince me that on the 16th of September, 1886, Schwartz could not buy glycerine of about the same quality as defendants at six and one-half cents per pound, and that he knew that he could not. On all the proof I am constrained to hold that the defendants have failed to make out their case.
The next matter for consideration is whether or not the plaintiffs have sufficiently proved the contract set out in the complaint. The answer does not contain a formal specific denial of the contract alleged in the complaint. The defendants rely upon the allegations in paragraph 6 of the answer, to the effect that they orally consented to sell their glycerine at seven cents per pound up to December 31, 1886, but no longer. Elaborate argument has been made by counsel on the question whether such an allegation in an answer as to what the contract was is equivalent, under the rules of pleading, to the denial required by the Code.
The record shows that the original answer was in substance a general denial. The court at special term allowed defendants to amend by setting up affirmatively the alleged fraud and false representations. The general term, on appeal, struck out the general denial as inconsistent with the affirmative defense. This result would have compelled the defendants either to admit the alleged contract as a whole, or to lose their affirmative defense. They, therefore, made further application to the court, and were permitted to interpose their answer in its present form. While there are decisions which intimate that it is not a good denial of a contract to plead affirmatively that the contract was different from the one alleged, I think that under the answer in this case defendants were entitled to introduce evidence as to what the contract really was, and are not to be held to admit the entire allegation of the complaint in that behalf.
The testimony of Mr. Gross as to the conversation is not contradicted by any witness. But while it satisfies me that January 1, 1887, and not April 1, 1887, was the date at which the price was to be increased from 7 to 7J cents per pound, it also satisfies *91 me that the contract was for the whole season, and not merely up to January 1, 1887.
James Thompson, for app’lts; George A. Black, for resp’ts.
Mr. Gross, after testifying to the offer of seven cents, and his response that “ if that is the price of glycerine all well and good,” adds, “ this was to he up to January at seven cents. I said, ‘All right, Mr. Schwartz, if that is the price you can have the glycerine.’ Just at that moment my brother happened in the factory. Mr. Schwartz went out, and in going out he said : ‘We will give you 7J cents after January 1to which there was no reply, either from my brother or myself.” Bearing in mind the fact that the defendants had been in the habit of selling all their glycerine to the plaintiffs, and that their sales were made of the season’s product, there is no ground for finding that the plaintiffs and defendants were, at the interview of September 16, 1886, treating with regard to anything but the product of the whole season. Mr. Gross does not say that the offer of Schwartz was only for the product to January 1, or that he limited the contract to that date. It was to be seven cents up to January. In other words, seven cents was fixed as the price up to January, and Schwartz suggested an increase to 7J cents for the remainder of the season, to which no objection was made by defendants. In my opinion the minds of the parties met, both as to what was to be sold, and the price at which it was to be sold.
The ordinary measure of damages in cases of this description is the difference between the contract price and the market price at the time and place of delivery. Dana v. Fiedler, 12 N. Y., 40; Parsons v. Sutton, 66 N. Y., 92. The plaintiffs have alleged no special damage in their pleading. They have contented themselves with proving the amount of glycerine actually sold by defendants to others on several occasions from November, 26, 1886, to July 12, 1887, inclusive, at 12, 13, llj- and Ilf cents per pound.
In Graham v. Maitland, 1 Sweeney, 149, it was held that in cases where the damages to be recovered depend upon the market value of the goods, the law contemplates a range of the entire market,and the average of prices as thus found, running through a considerable portion of time, and that proof of a single sale is insufficient to establish the value of the goods so sold. In that case the proof was of a single sale of four bales of cotton. The market value of cotton was easily ascertainable. In the present case the difficulty of ascertaining the market value of crude glycerine at any particular period of time is-abundantly demonstrated. The plaintiffs have furnished the best available evidence. The proof is not of a single sale, but a number of sales of the precise article contracted for, running through the season, and at rates not varying widely. There is no evidence that these sales were not made in the ordinary course of business.
I have revised the computations in accordance with my findings, and direct that the plaintiffs have judgment in the sum of $10,-034.21, with interest from April 14,1887.
*92 Sedgwick, Ch. J.
The action was for damages for the non-delivery of goods agreed by defendants to be delivered to plaintiff.
The learned counsel for the appellants have argued on the appeal certain questions which were not presented on the trial, and did not occasion any exception to the rulings of the referee. These were the effect of the statute of frauds in the case and whether the principal amount if due, assuming the damages to be unliquidated, bore interest, and also as of what time the damages were to be computed.
I am of opinion that the allegation of the complaint of the contract, not being controverted by the answer, was to be taken as true for the purpose of the action. Code § 522; Fleischmann v. Stern, 90 N. Y., 110. For the purpose of determining the basis of the cause of action, the allegation of the answer, of a contract of other terms or of a different character, has no function or effect
The differences of fact between the parties have been fully and satisfactorily considered by the learned referee. The facts found by him were supported by evidence. The conclusions of law from the facts were correct Judgment affirmed, with costs.
Dugro and Gtldersleeve, JJ., concur