

FREDERICK S. HARLOW, Appellant, *v.* HIRAM LA BRUM, Respondent.

*Partnership agreement procured by fraud — void ab initio — answer alleging that the agreement was procured by fraud — proof competent thereunder — effect of a false representation as to cost of chattels — relations of co-partners — a deceived partner relieved by a court of equity.*

Where a contract or claim upon which a plaintiff seeks to recover had its inception in fraud practiced upon the defendant, which formed the inducement for the creation of the liability charged in the complaint, such fraud vitiates the contract as between the parties affected by it.

If a contract creating a co-partnership had its inception in fraud, it is as between the parties to it void *ab initio*, and its revision will relate back to the time of its making.

Where the answer, in an action brought to dissolve a partnership and for an accounting, does not deny the execution of the articles of co-partnership alleged in the complaint, but sets up the affirmative defense, that the co-partnership articles are void for fraud, the failure of the defendant to deny the execution of the articles of co-partnership does not put him in a position where he cannot set up in his answer matter which affects the validity of the contract, and under such answer it is clearly competent for him to attack the articles of co-partnership for fraud.

An action will not ordinarily lie against a person on account of his false representation as to the value of property, by which another has been induced to act, as in such case the party to whom the representation has been made had access to the open market to determine the value of the property and could exercise his own judgment as to its value; but the rule is otherwise where a fraudulent representation has been made by a vendor as to the cost of a chattel which is the subject of a sale.

The relation of partners is one implying the highest degree of mutual confidence. By such relation each becomes the custodian not only of the property but to a great degree of the character and business standing of the other, and the court in an equitable action will not uphold a contract between partners consummated by fraud, nor, as between the deceiver and deceived, bind the property and character of the latter, nor will the court require the relation to be continued, until the injured and deceived party has been subjected to actual loss, which he may prove, in dollars and cents.

When a party appeals to the court for relief, and establishes the fraud, he should be relieved from the hazard of a business combination into which he has been inveigled by fraud and misrepresentation.

APPEAL by the plaintiff, Frederick S. Harlow, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 3d day of June,

1894, upon the decision of the court, rendered at the Saratoga Circuit, after the jury, failing to agree, had been discharged and the case had been taken for decision by the court, adjudging an agreement of co-partnership void and appointing a receiver, with notice of an intention to bring up for review upon such appeal the said judgment, order and decision.

*Jesse Stiles* and *James W. Verbeck*, for the appellant.

*Edgar T. Brackett*, for the respondent.

MAYHAM, P. J. :

The plaintiff brings this action for a dissolution of what he alleges to be a valid existing co-partnership between himself and the defendant, and for an accounting as partners. The complaint sets out written articles of co-partnership.

The answer does not deny the making of the written articles of co-partnership, but impliedly admits the same, and sets up as a defense that the defendant was induced to enter into such co-partnership by the fraudulent representations of the plaintiff that a stock of merchandise which he put into such co-partnership cost the sum of $1,890.05, an undivided half of which would belong to the defendant under such articles of co-partnership, and against which defendant put in the sum of $850 in cash and his notes to the plaintiff of $1,150, and alleges that the merchandise in fact cost the plaintiff but the sum of $1,134, which fact the plaintiff well knew at the time of making such representations, and of which defendant was wholly ignorant. The answer also alleges that under such supposed partnership he worked from the 18th day of October, 1893, to the 24th day of March, 1894, for which his services were worth twelve dollars per week and for which he had received but six dollars a week, and that the fraud was not known to or discovered by defendant until the commencement of this action.

The defendant, in his answer, also demands that it be adjudged that there never existed any partnership between the plaintiff and defendant; that the articles be vacated and set aside; that the notes or due bills be canceled and set aside, and demands the recovery of the money paid by defendant under such fraudulent agreement, and payment of balance due for the services of the defendant.

The trial judge finds upon, we think, sufficient evidence the fol-
lowing facts:

1. "That on or about the 18th day of October, 1893, the defend-
ant entered into a written agreement of co-partnership with the
plaintiff to carry on a mercantile business at Saratoga Springs, N. Y.,
and purchased from the plaintiff an undivided one-half of a stock
of goods then owned by the plaintiff for the sum of $2,000, $800 of
which he then or thereafter paid in cash, and for the balance of
which the plaintiff holds his note, or due bill, dated October,
1893."

2. "That to induce the defendant to enter into such co-partner-
ship agreement with the plaintiff, and to purchase from the plaintiff
the said undivided one-half of said stock of goods then owned by
the plaintiff, the plaintiff represented to the defendant that he, the
plaintiff, had paid for the Mabbett stock, so-called, which formed a
portion of the stock then owned by the plaintiff (one-half of which
he sold to the defendant), the sum of $1,890.05."

3. "That such representation was false, and was known by the
plaintiff to be so when he made the same, and he had not, in fact,
paid said sum of $1,890.05 for said Mabbett stock, nor any other or
greater sum than $1,136.80, and said statement was made by the
plaintiff to the defendant to induce him, the defendant, to enter
into said co-partnership agreement to buy one undivided one-half of
said stock."

4. "That in ascertaining the cost of the stock then on hand owned
by the plaintiff, and an undivided one-half of which he proposed to
and did subsequently sell to the defendant, the parties took a list
of bills of goods purchased by the plaintiff at the cost price thereof
from the time he commenced business, and from the aggregate of
such cost deducted the cost price of the goods sold by him during
the time he had so been in business, the difference being the cost of
the goods then in stock, of which the defendant thus purchased an
undivided one-half."

5. "That the defendant relied on said representation of the plain-
tiff and believed the same, and without the same he would not
have entered into said co-partnership agreement, or purchased the
undivided one-half of said stock of goods of the plaintiff, as he
did do."

6. " That the defendant did not discover said fraud, thus practiced upon him by the plaintiff, until after the commencement of this action."

7. " That, before discovering the fraud thus practiced on him by the plaintiff, the defendant rendered work, labor and services in said store, thus operated by said co-partnership, for twenty-two weeks, which services were worth $12.00 per week, and that the defendant admits receiving on account of said services the sum of $6 per week ($132 in all), apparently leaving a balance thereon of $132."

8. " It appeared upon the trial that a receiver of the property of the firm has been appointed in this action, and that he has sold the tangible property thereof. No evidence was given tending to show the amount of the receipts from the business retained by the defendant, and thereupon it is found that said amount retained by him does not exceed the value of his services as last above found."

9. " The allegations of fact stated in the complaint are true, except as qualified by the above findings."

And, as conclusions of law, the court finds:

1. " That (owing to said false representation thus made by the plaintiff to the defendant, and the fraud thus practiced by the plaintiff upon him, the defendant) said co-partnership agreement was and is voidable, and the defendant is entitled to have the same set aside and annulled."

2. " That, owing to such fraud and false representation of the plaintiff, the agreement by which the defendant bought and the plaintiff sold such undivided one-half of such stock of goods, was and is voidable, and the defendant is entitled to have the same set aside and annulled and to be restored to whatever he parted with thereunder."

3. " That the defendant is entitled to judgment against the plaintiff herein:

" (*a*) Declaring said partnership agreement and said agreement of purchase of such undivided one-half of said stock void.

" (*b*) Directing the receiver herein, after first paying any debts outstanding and unpaid that wore contracted during the existence of said co-partnership, to pay, out of any funds in his hands, to the defendant the sum of $850 (the sum thus paid by him to the plaintiff), with interest on $750 thereof from October 18, 1893, and on

$100 thereof from December 12, 1893 (amounting to the sum of $879.25).

" (*c*) Directing the plaintiff to deliver to the defendant the due bill of the defendant, dated October 18, 1893, and now held by the plaintiff.

"(*d*) For the costs of this action."

But it is insisted by the learned counsel for the plaintiff. that, as the allegations of co-partnership as stated in the complaint are not denied by the answer, they must, under the provisions of section 522 of the Code of Civil Procedure, be taken as true, and in support of that contention he cites *Fleischman* v. *Stern* (90 N. Y. 110). But it will be seen, by an examination of that authority and all the other cases cited in support of that contention, that they do not relate to a case where the contract or claim upon which the plaintiff seeks to recover had its inception in fraud practiced upon the defendant, which formed the inducement for the creation of this liability charged in the complaint. That fraud vitiates all contracts, as between the parties affected by it, is a doctrine so elementary as not to require the citation of authorities.

If the contract creating the co-partnership had its inception in fraud, it was, as between the parties to it, void *ab initio*, and its revision will relate back to the time of making. The answer, therefore, while it did not deny the execution of the articles of co-partnership, sets up the affirmative defense that they were void for fraud..

The making of the articles of co-partnership could not be truthfully denied in the answer, and a failure to deny their execution did not put' the defendant, under the authority of *Beard* v. *Tilghman* (66 Hun, 12), in a position where he could not set up in his answer matter which went to the validity of the contract.

It was, therefore, clearly competent under the defendant's answer to attack the articles of co-partnership for fraud.

In 2 Bates Partnership (§ 595) the effect of fraud upon the validity of a partnership is stated as follows : " A person induced to enter into a partnership by fraudulent misrepresentations, although he may have a dissolution on this ground, may also obtain a decree.rescinding or canceling the partnership agreement *ab initio*, even though the misrepresentations are not such as would entitle him to an action for deceit. He can also have an action for deceit against the guilty

partners.    In such cases the chancellor will administer complete relief by ordering repayment of all sums advanced or expended by the complainant, and compensation and indemnity.    This is not giving damages, but is a proper consequence of rescinding the contract, and the complainant has a lien on the assets for what he has paid in."

It is also urged by the learned counsel for the plaintiff that as there was no proof that the stocks of goods were in fact worth less than $1,890.05, that, therefore, the defendant had not by the proof suffered any loss, and that he was not, therefore, entitled to any relief.

The representation in this case was not a mere representation by the plaintiff of the value of the property, which at most could but be an expression of his opinion, and for which no action would ordinarily lie.    (*Chrysler* v. *Canady*, 90 N. Y. 272; *Schumaker* v. *Mather*, 133 id. 590.)

In such cases the party purchasing, or to whom the representation is made, has access to the open market to determine the value, and may exercise his own judgment as to the value.

We think the rules are different where fraudulent representation is made by the vendor as to the cost of a chattel.    In *Fairchild* v. *McMahon* (139 N. Y. 290) O'BRIEN, J., sharply recognizes the existence of such distinction, and in discussing this question of a distinction between an opinion by the vendor and false representation as to its cost, says : " But the question here is not one arising out of a representation as to value.    The representation was with respect to a fact which might, in the ordinary course of business, influence the action and control the judgment of the purchaser, namely, the price paid for the property about to be sold by the vendor   *   *   *   and so we think that a false statement with respect to the price paid under such circumstances, which is intended to influence the purchaser, and does influence him, constitutes a sufficient basis for the finding of fraud," citing in support of that contention, *Sandford* v. *Handy* (23 Wend. 260) ; *Van Epps* v. *Harrison* (5 Hill, 63) ; *Smith* v. *Countryman* (30 N. Y. 655) ; *Hammond* v. *Pennock* (61 id. 151) ; *Goldenbergh* v. *Hoffman* (69 id. 326).

Nor can we agree with the contention of the learned counsel for the plaintiff, that, as no pecuniary damage was proved by the defendant, he is not entitled to any relief in this action.

The relation of partners is one implying the highest degree of mutual confidence.  By such relation each becomes the custodian, not only of the property, but to a great degree of the character and business standing of the other.  For the court, therefore, in an equitable action, to uphold a contract consummated by fraud, and thus, as between the deceiver and the deceived, to bind the property and character of the latter, would seem to be not only inequitable, but oppressive.  Nor should the relation be continued until the injured and deceived party has been subjected to actual loss, which he may prove in dollars and cents.

When he appeals to the court for relief and establishes the fraud, he should be relieved from the hazard of a business combination into which he has been inveigled by fraud and misrepresentation.

We think, therefore, that the trial court was right in declaring this contract void and inoperative from its inception, and by the judgment of the court restoring, as far as possible, the *statu quo* of these parties.

We have carefully examined all the exceptions taken by the learned counsel for the plaintiff to the rulings, findings, refusals to find and determinations of the trial judge, and find no error for which this judgment should be reversed.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.